**Opinion issued April 1, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-12-01173-CR**

_____

**LYDELL GRANT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1288802**

## MEMORANDUM OPINION

A jury convicted appellant, Lydell Grant, of the first-degree felony offense

of murder, assessed punishment at confinement for life, and imposed an $8,000

fine.[1]  In his sole issue, appellant contends that the trial court erred in admitting during the punishment phase three photographs of a wig and two masks found when the police searched his car.

We affirm.

## Background

Around 11:45 p.m. on December 10, 2010, at Club Blur, a nightclub located in the Montrose area of Houston, four bouncers, two patrons of the club, and a bystander observed the complainant, Aaron Scheerhorn, run up to the door of the club in a panic.  Scheerhorn was followed by a larger man who chased him up to the club.  Scheerhorn screamed for help and opened up his shirt to show that he had been stabbed.  As he tried to get inside the club, the assailant stabbed him again, chased him into an adjacent parking lot, and stabbed him several more times.  After Scheerhorn collapsed, the assailant made eye contact with one of the witnesses and calmly left the scene.  Scheerhorn later died from his injuries.  Six out of the seven eyewitnesses identified appellant, both in a photo-array and in court, as the assailant.

Five days after Scheerhorn's murder, Houston Police Department ("HPD") Officer K. Allen stopped appellant for a traffic violation.  After Officer Allen arrested appellant for driving with a suspended license, he discovered that

---

[1]     *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (Vernon 2011).

2

appellant was wanted for questioning in connection with Scheerhorn's murder, so he transported appellant to the homicide division. Homicide investigators subsequently obtained a warrant to search appellant's car. During the ensuing search, Officer A. Palatino discovered and photographed a wig, a ski mask, and a Halloween mask located in a bag contained in the trunk.

During a break in the guilt-innocence phase of appellant's trial, and outside the presence of the jury, the State informed the trial court that it intended to offer the photographs taken during the search. The trial court stated, "I don't see any reason the mask comes in. It doesn't have anything to do with this case. Right?" The prosecutor replied that the court's understanding was correct. Defense counsel stated that when the State offered the items and photographs into evidence, he would object on Rule 402 and Rule 403 grounds. The trial court ordered the State to redact a report that mentioned these items. The State did not offer the photographs of the wig and masks for admission during the guilt-innocence phase.

The jury subsequently found appellant guilty of the offense of murder. During the punishment phase, the State called Officer Palatino and asked her if she took the pictures of the wig and two masks. After she responded that she did, the State offered these three photographs for admission. Defense counsel objected "under Rules 402 and 403, Texas Rules of Evidence." The trial court overruled the objection and admitted the photographs. Officer Palatino testified that she

3

discovered the items—a wig, a ski mask, and a "skull mask similar to that movie Scream"—in a bag located in the trunk of appellant's car. The State later questioned HPD Detective E. Cisneros, one of the investigators assigned to the case, about whether the ski mask and the Halloween mask could be used so "that someone might conceal their identity from someone being able to see their face and who they are[.]" Detective Cisneros responded, "Yes." Defense counsel did not object to this question.

During the punishment-phase charge conference, defense counsel requested that the charge include an instruction informing the jury that the State must prove extraneous offenses beyond a reasonable doubt. Counsel further clarified, "The concern is the implications of aggravated robbery would be all those materials in the trunk, Your Honor." The trial court included the requested instruction in the written charge.

Appellant pleaded true to the allegations in an enhancement paragraph, which concerned a 1994 conviction for aggravated robbery, and stipulated that he had five other prior convictions: a 2004 conviction for possession of marijuana, a 2006 conviction for theft, and three 2009 convictions for credit or debit card abuse. In addition, the State presented evidence that appellant was a member of the 52 Hoover Crips, which was identified as a violent Houston-area gang. Ultimately,

the jury assessed appellant's punishment at confinement for life and imposed an $8,000 fine. This appeal followed.

## Admission of Evidence

In his sole issue on appeal, appellant contends that the trial court erroneously admitted three photographs[2] depicting a wig, a ski mask, and a Halloween mask discovered during a search of the trunk of his car.

### A.    *Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)). We will not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Id.* In applying the abuse of discretion standard, we may not reverse a trial court's admissibility decision solely because we disagree with it. *Powell v. State*, 63

---

[2]    The State raises the question of whether appellant preserved error concerning the admission of these photographs. When the State offered these exhibits during the punishment phase, defense counsel clearly objected based on Rules 402 and 403. The trial court overruled these objections and admitted the photographs. On appeal, appellant argues that "[t]he evidence should not have been admitted because its probative value was substantially outweighed by the danger of unfair prejudice." We hold that appellant preserved this Rule 403 complaint for appellate review. To the extent that appellant argues that the photographs improperly depicted an extraneous offense in violation of Rule of Evidence 404(b), we agree with the State that appellant's trial objection based on Rules 402 and 403 did not preserve error with regard to this complaint. *See Batiste v. State*, 217 S.W.3d 74, 82 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that trial objection on relevancy grounds did not preserve Rule 404(b) extraneous offense complaint for appellate review).

S.W.3d 435, 438 (Tex. Crim. App. 2001). We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B. *Law Governing Admissibility of Photographs*

Code of Criminal Procedure article 37.07 governs the admissibility of evidence at the punishment phase of a trial. *Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Specifically, article 37.07, section 3(a)(1) provides:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2013). The trial court has wide discretion in determining the admissibility of evidence presented at the punishment phase. *Lamb v. State*, 186 S.W.3d 136, 141 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "[R]elevance during the punishment phase of a non-capital trial is determined by what is *helpful* to the jury." *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (emphasis in original) (citing *Rogers v.*

6

*State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)); *Garcia v. State*, 239 S.W.3d 862, 865 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Relevance in [the punishment] context is more a matter of policy than an application of Rule of Evidence 401; it fundamentally consists of what would be helpful to the jury in determining the appropriate punishment.").

Although the trial court possesses wide latitude in determining the admissibility of punishment-phase evidence, the evidence must still satisfy Texas Rule of Evidence 403. *Lamb*, 186 S.W.3d at 143. Evidence may be excluded pursuant to Rule 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403; *Lamb*, 186 S.W.3d at 143; *Johnson v. State*, 988 S.W.2d 958, 960 (Tex. App.—Beaumont 1999, no pet.) ("The rule requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value."). Thus, relevant evidence that is otherwise admissible under article 37.07 is inadmissible if it does not satisfy Rule 403. *Lamb*, 186 S.W.3d at 144. When a party objects under Rule 403, the trial court must balance the probative value of the evidence against its potentially prejudicial effect, and the trial court considers, among other factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some

irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1990)); *see also Erazo*, 144 S.W.3d at 491–92 ("If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects.").

Generally, the erroneous admission of evidence is non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *See Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005) (holding that violation of evidentiary rule is non-constitutional error). We disregard non-constitutional errors that do not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Robinson v. State*, 236 S.W.3d 260, 269 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). An error affects a substantial right only when the error had a substantial and injurious effect or influence on the jury's verdict. *Robinson*, 236 S.W.3d at 269 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). The error is harmless if it had only a slight influence on the verdict. *Id.* In determining whether the error was harmless, we consider the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in connection with other evidence in the case. *Id.* (citing *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003)). We also consider

other factors, including whether the State emphasized the error and whether the erroneously admitted evidence was cumulative. *Id.* (quoting *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002)). When conducting a harm analysis, we consider the entirety of the record, including evidence of the defendant's guilt, as well as the jury instructions and closing arguments. *Motilla*, 78 S.W.3d at 355–56, 358, 360.

### C.    *Harm Analysis*

Here, even if the trial court improperly admitted the three photographs depicting a wig, a ski mask, and a Halloween mask found during the search of the trunk of appellant's car, we conclude that such error was harmless. The evidence of appellant's guilt was substantial. Six eyewitnesses unequivocally identified appellant both in a photo-array and in court as the assailant who stabbed Scheerhorn. The witnesses testified that appellant had already stabbed Scheerhorn at least once before he ran up to the club seeking help, that appellant chased him to the entrance of the club, that appellant was physically larger than Scheerhorn, and that appellant continued stabbing Scheerhorn several more times after Scheerhorn informed the witnesses that he was injured. One of the eyewitnesses testified that, after Scheerhorn collapsed to the ground and appellant ceased stabbing him, appellant made eye contact with the witness and calmly left the scene. This witness characterized appellant's demeanor as "emotionless." Thus, the evidence

reflects that appellant inflicted numerous severe injuries on Scheerhorn and displayed no emotion or remorse as Scheerhorn died in the parking lot.

Appellant pleaded true to the allegations in the enhancement paragraph that he had a prior conviction for aggravated robbery, and he stipulated that he had had five other convictions since 2004. The State also presented evidence that appellant was a member of the 52 Hoover Crips, "a violent gang here in the Houston area." *See Garcia*, 239 S.W.3d at 866–67 ("As a general matter, testimony regarding a defendant's affiliation with a gang may be relevant and admissible at the punishment phase to show the defendant's character.").

Although the three challenged photographs were not cumulative of any other evidence, little time was needed to develop this evidence, and the State did not emphasize this evidence during its closing argument. This evidence was mentioned three times during the punishment phase: Officer Palatino briefly described the contents of the photographs after the trial court admitted them into evidence; Detective Cisneros testified that the ski mask and the Halloween mask could be used as a means of concealing appellant's identity; and defense counsel mentioned these photographs during his closing argument. Specifically, defense counsel argued that "none of those items are linked to criminal activity" because if there was any indication that they had actually been used in an extraneous offense by appellant, the State certainly would have informed the jury of that fact. He

10

urged the jury to put those items aside "because any kind of bad behavior has not been proven to be associated with those items."  Furthermore, the written charge included an instruction informing the jury that it was to consider extraneous offenses and bad acts only if it determined that the State had proven beyond a reasonable doubt that appellant committed such extraneous offenses and bad acts.

The jury assessed appellant's punishment at the statutory maximum—confinement for life—but the evidence reflects that appellant stabbed Scheerhorn multiple times, ignoring his cries for help, and displayed no emotion during or after commission of the offense.  Appellant also had multiple past convictions and was a member of a violent street gang.  We therefore conclude that if the three photographs depicting the wig and two masks found in appellant's trunk had any effect on the jury's punishment decision, it was only a slight influence.  *See Robinson*, 236 S.W.3d at 269.  We hold that any error in admitting these photographs did not affect appellant's substantial rights and, therefore, the error is harmless.

We overrule appellant's sole issue.[3]

---

[3]     Appellant filed a pro se supplemental brief raising one additional issue.  "Appellants are not allowed to have 'hybrid representation' on appeal, in which an appellant and an attorney can present independent points to an appellate court." *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001); *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995) ("[A]ppellant is not entitled to hybrid representation.  Hence, nothing is presented for review.").

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).