Leonard Ray ATKINSON, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–08–00454–CR, 01–08–00455–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 14, 2010.

Discretionary Review Refused June 16, 2010.

Kenneth Goode, Houston, TX, for Appellant.

Eric Kugler, Assistant District Attorney of Harris County, William J. Delmore III, Assistant District Attorney, Kenneth Magidson, Harris County District Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

A jury convicted appellant, Leonard Ray Atkinson, of indecency with a child and aggravated sexual assault of a child and assessed punishment at ten years' imprisonment for indecency with a child and twenty years' imprisonment for the sexual assault, with the sentences to run concurrently. In two points of error, appellant argues that: (1) the Fifth Amendment protection from double jeopardy prevents the trial court from convicting appellant of both indecency with a child and aggravated sexual assault of a child; and (2) he was egregiously harmed by the lack of a reasonable doubt instruction regarding extraneous offense evidence in the punishment phase of trial.

We affirm.

### Background

On September 12, 2006, Denise Abrego left her two minor children, her thirteen-year-old son, J.W., and her six-year-old daughter, the complainant, in the care of her live-in boyfriend, appellant, while she was at work. At some time during the evening, appellant took the complainant to the bedroom that he shared with Abrego. While in the bedroom, appellant removed

the complainant's shorts and rubbed her vagina. He then removed his shorts, exposing his penis, put the complainant on his lap and put his penis inside her vagina. When appellant was finished, he asked to take a shower with the complainant, but she took a bath alone. J.W. heard the complainant crying while she was in the bath. He went into the restroom and found his sister sitting in the bath tub. The complainant told J.W. what had happened, and J.W. told his uncle. After Abrego was informed of the events, she returned home, where she began punching appellant and questioning his behavior. Appellant responded that he had "blacked out" and could not remember what happened. Abrego took the complainant to the Texas Children's Hospital, where the complainant informed Nurse Melissa Fonseca that her "middle part" was hurting. The complainant also told Fonseca that appellant took off her shorts and rubbed her "middle part" and then put his "middle part" in her "middle part." A physical examination followed the interview and Fonseca concluded that there was some redness around the hymenal area of the vagina and that it could be consistent with the complainant's story.

A trial was held and the jury found appellant guilty on both charges. The jury assessed appellant's punishment as ten years' imprisonment for indecency with a child and twenty years' imprisonment for aggravated sexual assault of a child. This appeal followed.[1]

### Double Jeopardy

■ In his first point of error, appellant contends that the trial court erred because his conviction for both indecency with a child and aggravated sexual assault of a child violated the United States Constitution's Fifth Amendment prohibition against double jeopardy. Appellant was indicted for two separate crimes—indecency with a child "by touching" and aggravated sexual assault. The jury was given two separate charges—one on indecency with a child and one on aggravated sexual assault—and found appellant guilty of both crimes. Appellant contends that his convictions arose out of the same conduct during the same event. Specifically, he argues that the indecency charge was subsumed within the aggravated sexual assault charge because the evidence established only that he touched the complainant with his penis. He essentially argues that he was convicted for both the greater offense of aggravated sexual assault of a child and the lesser-included offense of indecency with a child for the same act.

■ Appellant never objected to the charge at trial or asserted any double jeopardy complaint prior to this appeal. However, he argues that we can review his complaint because a double jeopardy claim can be raised for the first time on appeal if the undisputed facts show the double jeopardy violation is apparent from the record. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex.Crim.App.2000). Specifically, a defendant may raise a double jeopardy claim for the first time on appeal when (1) no further proceedings are required to "expand the record with new evidence" and the claim can be resolved "on the basis of the existing record"; and (2) "enforcement of the usual rules of procedural default serves no legitimate state interest." *Id.* at 643–44 (citing *United States v. Broce*, 488 U.S. 563, 575, 109 S.Ct. 757, 763–66, 102

---

1. Appeal number 01–08–00454–CR is an appeal of trial court cause number 1096852, convicting appellant of indecency with a child. Appeal number 01–08–00455–CR is an appeal of trial court cause number 1096853, convicting appellant of aggravated sexual assault of a child.

L.Ed.2d 927 (1989) and *Menna v. New York*, 423 U.S. 61, 63, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975)); *see also Langs v. State*, 183 S.W.3d 680, 687 (Tex.Crim.App. 2006) ("[A] potential multiple-punishment double jeopardy claim may be forfeited if a defendant does not properly preserve that claim.") (citing *Gonzalez*, 8 S.W.3d at 642–43). Therefore, we must first determine whether appellant's double jeopardy complaint can be resolved on the basis of the existing record and is, therefore, preserved.

▇ Double jeopardy is the principle that a person shall not be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. These prohibitions protect against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex.Crim. App.1990). When a defendant is subjected to a single trial only, the protection against multiple punishments is applicable. *See id.* at 624.

▇ For double jeopardy purposes, "[t]he same offense means the identical criminal act, not the same offense by name." *Luna v. State*, 493 S.W.2d 854, 855 (Tex.Crim.App.1973). A conviction for both a greater and a lesser-included offense arising out of the same act violates double jeopardy. *See Hutchins v. State*, 992 S.W.2d 629, 632 (Tex.App.-Austin 1999, pet. ref'd, untimely filed). If the State's pleadings do not determine whether the offenses prosecuted are the same, this court will look to the proof offered at trial. *See Luna*, 493 S.W.2d at 855.

A defendant is guilty of aggravated sexual assault of a child when the evidence shows that he intentionally or knowingly caused his sexual organ or his mouth to contact or penetrate the anus or sexual organ of a child by any means. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2009). A defendant is guilty of indecency with a child when the evidence shows (1) that he engaged in sexual contact with a child younger than 17 years or (2) that, with the intent to arouse or gratify his sexual desire, he exposed his anus or any part of his genitals knowing the complainant was present. *Id.* §§ 21.11(a)(1), (a)(2)(A) (Vernon Supp. 2009). A defendant engages in sexual contact if he touches, including touching through clothing, the anus, breast, or any part of the genitals of a child. *Id.* § 21.11(c)(1).

Indecency with a child can be a lesser-included offense of aggravated sexual assault. *See Ochoa v. State*, 982 S.W.2d 904, 908 (Tex.Crim.App.1998) (citing *Cunningham v. State*, 726 S.W.2d 151, 153–54 (Tex. Crim.App.1987)). In analyzing a case where the appellant exposed his genitals and penetrated the complainant's anus, the Texas Court of Criminal Appeals stated:

> Just as a conviction for a completed offense bars prosecution for an attempt to commit the same offense, a conviction for [a sexual offense against a child] bars conviction for conduct that, on the facts of the case, is demonstrably part of the commission of the greater offense. For example, indecency by genital exposure of oneself in the course of manual penetration of another are separate offenses, while penile contact with mouth, genitals, or anus in the course of penile penetration will be subsumed. Thus, indecency by exposure may or may not be a part of sexual assault or indecency by contact, depending on the facts of the case.

*Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim.App.2004).

Here, the evidence undisputedly shows that appellant caused his penis to pene-

trate the complainant's vagina, supporting his conviction for aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i). However, the evidence is ambiguous concerning other contact between appellant and the complainant. Fonseca testified that the complainant told her appellant exposed his penis, "took my shorts off and rubbed my middle part," and put his "middle part" in her "middle part." The complainant also used dolls to demonstrate for the jury the contact between herself and appellant, but the record does not explain in any detail exactly what she showed the jury.

Appellant argues that evidence that he "rubbed" the complainant's genitals is evidence of indecency by contact that is subsumed within the aggravated sexual assault for penetration of her genitals with his penis and that there is no other evidence of genital contact. The State argues that the word "rubbed" is generally used to indicate touching with hands and that the jury could have concluded from the evidence at trial that appellant first touched the complainant's genitals with his finger and then subsequently penetrated her with his penis. It is not clear from the record on appeal whether appellant "rubbed" the complainant with his penis or with his finger. Because our analysis of whether indecency with the child is a lesser-included offense of aggravated sexual assault depends on the specific facts of the case, and those facts cannot be determined "on the basis of the existing record," we conclude that appellant has failed to preserve his double jeopardy complaint for review. *See Gonzalez*, 8 S.W.3d at 644; *see also Langs*, 183 S.W.3d at 687 ("The fact that the jury's verdict *could* have relied on a theory that would violate the Double Jeopardy Clause, is not sufficient to show a constitutional violation 'clearly apparent on the face of the record.'" (quoting *Gonzalez*, 8 S.W.3d at 643)).

We overrule appellant's first issue.

### Failure to Instruct on Reasonable Doubt

In his second point of error, appellant contends that he was egregiously harmed when the trial court did not offer a reasonable doubt burden-of-proof instruction in the punishment charge after evidence of the extraneous offense of PCP use was admitted. The State responds that appellant's claim lacks merit because the alleged offense was same transaction contextual evidence.

### A. Background Relevant to Jury Charge

At the guilt-innocence phase of trial, the State called multiple witnesses, including Michael Abrego, the complainant's uncle, and Denise Abrego, the complainant's mother. In the course of testifying about the events on the day the complainant was assaulted, Michael testified during cross-examination by appellant's counsel that appellant vacated the apartment at some point in the evening and that, on his return, appellant was not himself. On redirect examination, the State asked Michael what he meant when he testified that appellant was not himself. Michael testified that appellant appeared to be high and that he had seen appellant high on other occasions. When the State asked Michael to account for the number of times appellant was high, the defense objected that the drug use was an extraneous offense. The trial court sustained the objection.

Denise Abrego testified that when she heard of the complainant's assault, she began punching appellant and asked him why he had harmed the complainant. Denise testified that appellant informed her that he blacked out and could not remember

what happened because he was under the influence of PCP. When the State asked Denise to testify as to the number of times she had seen appellant under the influence of PCP, the defense objected, claiming the testimony constituted evidence of an extraneous offense, and, again, the trial court sustained the objection.

The jury charge for the guilt-innocence phase included an instruction that it could consider other crimes, wrongs, or bad acts allegedly committed by the defendant if it believed beyond a reasonable doubt that the defendant committed the other crime, wrong, or bad act. After deliberation, the jury convicted appellant of indecency with a child and aggravated sexual assault of a child.

During the punishment phase of trial, the State offered several exhibits containing proof of prior convictions for assault, driving while intoxicated, two instances of felony cocaine possession, and failure to stop and give information. The State also introduced appellant's stipulation as to these prior convictions. These were admitted without objection. The State then said, "In addition, the State would re-offer all the evidence from the guilt-innocence phase and we would rest at this time." Appellant made no objection and did not present any evidence at the punishment phase.

The jury charge for the punishment phase did not include an instruction on how to consider either extraneous offenses or same transaction contextual evidence. Appellant stated that he did not have an objection to the jury charge on the punishment. The jury assessed punishment at ten years' imprisonment for indecency with a child and twenty years' imprisonment for aggravated sexual assault, with the sentences to run concurrently.

## B. Standard of Review

In determining whether there is reversible error in the jury charge, we first decide whether error exists. *Middleton v. State,* 125 S.W.3d 450, 453 (Tex.Crim.App. 2003); *Almanza v. State,* 686 S.W.2d 157, 171–72 (Tex.Crim.App.1984). If error exists, we must next determine whether the defendant was harmed. *Middleton,* 125 S.W.3d at 453; *Almanza,* 686 S.W.2d at 171–72. The appellate court must apply the egregious harm standard to review an erroneous jury charge when, as here, the defendant's counsel failed to object to the charge. *Almanza,* 686 S.W.2d at 171.

## C. Use of Evidence at Punishment Phase

 By operation of law, the evidence admitted during the guilt-innocence phase of the trial is also before the jury at the penalty phase, and the jury may consider all the evidence adduced at the guilt-innocence phase in assessing a defendant's punishment. *Wright v. State,* 212 S.W.3d 768, 776 (Tex.App.-Austin 2006, pet. ref'd). The State's cursory request to re-offer the evidence from the guilt-innocence phase during the punishment phase has no effect on the use of that evidence at the punishment phase. *Id.* at 777 (citing *Rayme v. State,* 178 S.W.3d 21, 27 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd)). "We see no distinction in our evaluation of the evidence merely because the State moved to re-admit it in the punishment phase of the trial." *Rayme,* 178 S.W.3d at 27.

After a finding of guilt, additional evidence may be introduced by both the State and the defendant at the punishment phase of the trial. *Id.* at 24–25. Article 37.07 section 3(a) of the Texas Code of Criminal Procedure governs the admissibility and use of evidence at punishment in all non-capital cases. *See Huizar v. State,*

12 S.W.3d 479, 484 (Tex.Crim.App.2000). Article 37.07 section 3(a) provides:

> Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilt.
>
> (a)(1) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, *the circumstances of the offense for which he is being tried, and,* notwithstanding Rules 404 and 405, Texas Rules of Evidence, *any other evidence of an extraneous crime or bad act* that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. . . .

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2008) (emphasis added).

Although the Code of Criminal Procedure does not expressly require a jury instruction concerning extraneous offenses admitted in the punishment phase of a trial under section 3(a), the Court of Criminal Appeals has held that "such instruction is logically required if the jury is to consider extraneous-offense and bad-act evidence under the statutorily prescribed reasonable-doubt standard." *Huizar,* 12 S.W.3d at 484. Therefore, the trial court must sua sponte charge the jury under section 3(a) when extraneous evidence was admitted in the punishment phase of trial. *Huizar,* 12 S.W.3d at 484; *Rayme,* 178 S.W.3d at 25.

This Court has extended *Huizar* by holding that the trial court must also sua sponte charge the jury under section 3(a) when extraneous evidence is used in the punishment phase of trial, even though the evidence was admitted during the guilt-innocence phase. *Rayme,* 178 S.W.3d at 25 (citing *Graves v. State,* 176 S.W.3d 422, 432 (Tex.App.-Houston [1st Dist.] 2004, pet. stricken)). However, we have declined to extend *Huizar* to require a trial court to sua sponte charge the jury under section 3(a) when extraneous acts were admitted and used only during the guilt-innocence phase. *See id.* at 26.

We also note that *Huizar* specifically addressed the question of whether a trial court was required to charge the jury sua sponte on the burden of proof for evidence of extraneous offenses and bad acts admitted in the punishment phase. *See Huizar,* 12 S.W.3d at 484. The Court of Criminal Appeals has declined to extend its holding in *Huizar* to require trial courts to charge the jury in the punishment phase on the burden of proof for other types of evidence listed in section 3(a). *See Bluitt v. State,* 137 S.W.3d 51, 54 (Tex.Crim.App.2004). *Bluitt* noted that section 3(a) provided a non-exclusive list of six types of evidence that may be offered by either party during sentencing, including, among others, the prior criminal record of the defendant, the circumstances of the offense on trial, and extraneous offenses and bad acts that are shown beyond a reasonable doubt to have been committed by the defend or for which he could be held criminally responsible. *Id.* The court stated, "The only types of evidence for which a burden of proof is articulated are unadjudicated offenses and bad acts," and went on to hold that "[t]he criminal record of the defendant is not grouped with extraneous offenses, and therefore we presume that the legislature did not intend to require the same burden

of proof that it attached to extraneous, unadjudicated offenses." *Id.*

Here, the State argues that the evidence appellant claims entitles him to the burden of proof instruction is not extraneous offense evidence but is same transaction contextual evidence. When several crimes are intermixed, blended, or connected with one another so that they form an indivisible criminal transaction, they are collectively referred to as same transaction contextual evidence. *Lamb v. State,* 186 S.W.3d 136, 141 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Contextual evidence is admitted, not because it has any particular evidentiary purpose, but rather, because in narrating the one offense, it is impracticable to avoid mentioning the other extraneous offense. *Id.* at 142 (citing *Mayes v. State,* 816 S.W.2d 79, 86–87 (Tex.Crim.App.1991)); *see also Garza v. State,* 2 S.W.3d 331, 335 (Tex. App.-San Antonio 1999, pet. ref'd) ("Crimes do not occur in a vacuum, and the state is entitled to prove the circumstances surrounding the crime even though they may seem like irrelevant details."). Thus, same transaction contextual evidence illuminates the nature of the crime alleged by imparting to the trier of fact information essential to understanding the context and circumstances of events. *Lamb,* 186 S.W.3d at 142 (citing *Camacho v. State,* 864 S.W.2d 524, 532 (Tex.Crim. App.1993)).

The Texas Court of Criminal Appeals has not specifically addressed whether a reasonable doubt instruction under section 3(a) is required when same transaction contextual evidence is admitted during the guilt phase and re-offered at the punishment phase, but several courts of appeals have addressed this issue. *See, e.g., Glockzin v. State,* 220 S.W.3d 140, 152 & n. 6 (Tex.App.-Waco 2007, pet. ref'd) (holding burden of proof instruction was not required at guilt or punishment phase for same transaction contextual evidence admitted during guilt phase and used during punishment phase); *Moore v. State,* 165 S.W.3d 118, 124 (Tex.App.-Fort Worth 2005, no pet.) (holding appellant was not harmed "even if we assume that the trial court did err in failing to *sua sponte* provide beyond-a-reasonable-doubt jury instruction" on his same transaction contextual evidence admitted during punishment phase); *Garza,* 2 S.W.3d at 335 (stating, "[S]ince same transaction contextual evidence is not offered as evidence against a defendant, but simply to explain the circumstances of the offense, a reasonable doubt instruction is not required."). We note that admission of same transaction contextual evidence during the guilt-innocence phase does not require a reasonable doubt instruction. *Camacho,* 864 S.W.2d at 535; *see Garza,* 2 S.W.3d at 335 ("Although the jury may use the [same transaction contextual] evidence to assess the defendant's character, by holding that a limiting instruction is not required, the Texas Court of Criminal Appeals has already decided that we should not concern ourselves with that possibility.").

Here, at the guilt-innocence phase of trial, the State attempted to offer appellant's use of PCP into evidence though the testimony of Michael and Denise. Upon hearing the line of questioning by the State, the defense objected on the ground that the testimony contained an extraneous offense, and the trial court sustained the objections. To the extent that appellant's use of PCP was admitted into evidence at trial, it was admitted to provide the context for the occurrence of the charged offense—essentially, to explain why appellant, who had been living with the complainant and caring for her with no previous instances of abuse or trouble, had suddenly assaulted her on that night.

It was not offered to establish appellant's character, and it is properly categorized as same transaction contextual evidence. *See Garza,* 2 S.W.3d at 335 (comparing use of extraneous offense evidence that is intended to help jury evaluate defendant's character for purposes of assessing punishment, which requires that State bear burden of proving such offenses because they will be used against defendant, and same transaction contextual evidence used to explain circumstances, which does not require reasonable doubt instruction). Nevertheless, without appellant's requesting it, the trial court instructed the jury on the State's burden of proof for any "other crimes, wrongs or bad acts" allegedly committed by appellant, and the jury found appellant guilty.

At the punishment phase, no new evidence was introduced and neither party referred to or used in any way the testimony regarding appellant's PCP use. We have already determined that appellant was given a proper burden of proof instruction during the guilt-innocence phase, even though it was not required for the same transaction contextual evidence he complains of here, and our evaluation of the evidence does not change merely because the State made a cursory re-offer of it at the punishment phase. *See Rayme,* 178 S.W.3d at 27. Therefore, we conclude that appellant was not entitled to a reasonable doubt instruction during the punishment phase. *See Glockzin,* 220 S.W.3d at 152 & n. 6; *Garza,* 2 S.W.3d at 335; *see also Bluitt,* 137 S.W.3d at 54 (holding that only types of evidence for which burden of proof is expressly articulated in article 37.07 section 3(a) are unadjudicated extraneous offenses and bad acts); *cf. Rayme,* 178 S.W.3d at 26 (holding that reasonable doubt instruction was not required when extraneous acts evidence was not introduced, used, or referred to during punishment phase).

Because we conclude that there was no error in the jury charge at the punishment phase, we do not consider whether appellant was egregiously harmed. *See Almanza,* 686 S.W.2d at 172.

We overrule appellant's second point of error.

## Conclusion

We affirm the judgment of the trial court.