Opinion filed December 16, 2021



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00391-CR
_____

## LAVANDERS MARQUIS MUSKIN A/K/A LAVENDERS MUSKIN A/K/A QUEZ A/K/A LAVANDERS MUSKIN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 12384-D**

### M E M O R A N D U M   O P I N I O N

In 2016, a jury convicted Lavanders Marquis Muskin of the first-degree felony offense of aggravated sexual assault. Appellant appealed his conviction and sentence to our court. *See Muskin v. State*, No. 11-16-00339-CR, 2018 WL 5074553 (Tex. App.—Eastland Oct. 18, 2018, pet. ref'd) (mem. op., not designated for publication). In our 2018 opinion, we affirmed Appellant's conviction, but we

reversed and remanded for a new trial on punishment only. *Id.* at *4–5. Specifically, we determined that Appellant's punishment was improperly enhanced to that of a habitual offender. *Id.* at *4.

This appeal arises from the new punishment trial that occurred after our remand. The jury assessed Appellant's punishment at imprisonment for life in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000. The trial court sentenced Appellant accordingly. Appellant brings a single issue on appeal alleging he received ineffective assistance of counsel during the punishment trial. We affirm.

*Background Facts*

The underlying facts of this case are set out in our 2018 opinion. *See id.* at *1. As relevant to the proceeding before us, a jury found Appellant guilty of aggravated sexual assault of H.S. At the outset of the punishment trial on remand, the State offered into evidence State's Exhibits Nos. 1–26 which were all of the State's exhibits previously admitted during the first trial that occurred in 2016.[1] Appellant's trial counsel did not object to the admission of the State's exhibits, and the trial court admitted the exhibits, finding that they had been "previously considered by the Court and admitted."

After the admission of the exhibits, the jury heard testimony from H.S. and three other women who alleged that Appellant had also sexually assaulted them. The other victims included L.R., D.C., and J.C. Susie Striegler, a forensic nurse examiner, testified that she performed a sexual assault examination on H.S. and L.R. Striegler testified that the purpose of a sexual assault exam is "strictly medical."

---

[1]State's Exhibits Nos. 1–25 were admitted during the guilt/innocence portion of the first trial. State's Exhibit No. 26 is a pen packet from Mississippi that was offered during the punishment phase of the first trial. In this appeal, Appellant does not present any complaints concerning the admission of State's Exhibit No. 26.

During her testimony, Striegler read to the jury her previously admitted reports from both victims' sexual assault exams.

April Songer, another forensic nurse examiner, testified that she performed a sexual assault exam on J.C. She testified that collecting forensic evidence is a secondary purpose of a sexual assault exam and that the primary purpose of the exam is to evaluate medical issues and provide treatment to the victims of sexual assault. During her testimony, Songer read to the jury her report from J.C.'s exam. Appellant's trial counsel objected at this point on hearsay grounds. The trial court refused to hear a new objection because the report was contained within the previously admitted trial exhibits. The trial court noted that the exhibits were already properly admitted during the first trial and found that a "witness is entitled to read from an admitted exhibit."

Throughout the punishment trial on remand, the prosecutor used a "tool" and "toolbox" analogy when referring to the jury's purpose. At the close of the punishment trial, the prosecutor made closing arguments that contained a plea for law enforcement. The prosecutor referred to the four options available to the jury in the punishment charge and explained that each of the four options was an available "tool" that the jury could use to "protect society." After Appellant's trial counsel made his closing argument, the prosecutor's rebuttal argument again made use of the tool analogy—asking the jury to use the "biggest hammer that [it had] in [its] toolbox" to "send a message" to Appellant, the victims, and the community. Appellant's trial counsel did not object to the State's argument.

*Analysis*

In his sole issue on appeal, Appellant contends that he received ineffective assistance of counsel. He contends that trial counsel was deficient because (1) counsel failed to object, on confrontation grounds, to Songer reading a report

containing J.C.'s statements and (2) trial counsel erred by not objecting to improper jury argument by the State.

To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is one sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the appellant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

We note at the outset that Appellant did not allege ineffective assistance of counsel in his motion for new trial. Thus, trial counsel has not had an opportunity to explain or defend his trial strategy in response to the matters that Appellant

4

contends were deficient. Furthermore, trial counsel has not had an opportunity to explain what effect, if any, his alleged deficient conduct had on the manner in which he represented Appellant at the punishment trial.

Appellant's claims of ineffective assistance of counsel are premised on his trial counsel's failure to object on various grounds. When alleging ineffective assistance of counsel for failure to object, an appellant must demonstrate that, if trial counsel had objected, the trial court would have erred in overruling the objection. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

Appellant initially contends that his trial counsel was deficient because he failed to object to the admission of J.C.'s statements that were contained within Songer's sexual assault examination report. Appellant's argument is two-fold: he first argues that his counsel incorrectly stipulated to the admission of the exhibit that Songer read to the jury, and second, he argues that trial counsel should have objected because the report contains J.C.'s testimonial statements, which violates his confrontation rights.

"By operation of law, the evidence admitted during the guilt-innocence phase of the trial is also before the jury at the penalty phase, and the jury may consider all the evidence adduced at the guilt-innocence phase in assessing a defendant's punishment." *Atkinson v. State*, 404 S.W.3d 567, 572 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Wright v. State*, 212 S.W.3d 768, 776 (Tex. App.—Austin 2006, pet. ref'd)); *see Green v. State*, 839 S.W.2d 935, 945–46 (Tex. App.—Waco 1992, pet. ref'd) ("Evidence presented during the guilt stage is automatically before the jury on punishment regardless of whether it is formally re-offered by the State."). Thus, there is no requirement that evidence admitted during the guilt/innocence phase be re-offered to be considered for punishment. *See Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). This principle has been recognized by the Texas Court of Criminal Appeals in a situation where a case is

remanded for a new punishment trial. *Davis v. State*, 329 S.W.3d 798, 820 (Tex. Crim. App. 2010) (citing *Trevino*, 100 S.W.3d at 238).

Appellant faults his trial counsel for not objecting to the admission of the evidence admitted during the first trial.[2] But as set out in the preceding paragraph, the evidence admitted during the guilt/innocence phase of the earlier trial was available for the jury's consideration at the new punishment hearing. *See id.* Because an objection to the exhibits admitted during the earlier trial would have been futile, Appellant's trial counsel was not ineffective for not objecting to the admission of the previously admitted exhibits. *See Templeton v. State*, 629 S.W.3d 616, 625 (Tex. App.—Eastland 2021, no pet.).

Appellant also contends that trial counsel should have later objected to J.C.'s statements contained within the sexual assault examination report because their admission violated his rights under the Confrontation Clause. *See* U.S. CONST. amend. VI. Appellant contends that we should interpret the statements in the report as testimonial under *Crawford*, because he can "hardly see how a person giving a history of sexual assault to a sexual assault nurse examiner would not be seriously contemplating that their words would be used in furtherance of a prosecution." *See Crawford v. Washington*, 541 U.S. 36, 59 (2004) (holding that the Sixth Amendment is violated when a witness is permitted to relay out-of-court testimonial statements— unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant).

We first note that Appellant did not challenge in his prior appeal the admission of J.C.'s statements on the basis of a Confrontation Clause violation. When a witness provides a statement to a medical professional, as opposed to a law enforcement

---

[2]We note that Appellant had different trial counsel at the punishment trial on remand than he had during the 2016 trial.

officer, and the statement is made primarily for the purpose of medical treatment, the statement is not typically considered testimonial within the meaning of *Crawford*. *See Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009). "Virtually all Texas courts that have considered the issue have concluded that when a patient gives a verbal history to a sexual assault nurse examiner or other medical professional during a sexual assault exam for the purpose of receiving medical treatment, the history is not considered testimonial within the context of *Crawford*." *Ervin v. State*, No. 08-15-00025-CR, 2017 WL 3614237, at *11 (Tex. App.—El Paso Aug. 23, 2017, pet. ref'd) (not designated for publication) (collecting cases); *see, e.g.*, *Murray v. State*, 597 S.W.3d 964, 973–74 (Tex. App.—Austin 2020, pet. ref'd); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd); *see also Anavisca v. State*, No. 14-20-00160-CR, 2021 WL 4535409, at *8 (Tex. App.—Houston [14th Dist.] Oct. 5, 2021, no pet. h.) (mem. op., not designated for publication); *Dobbs v. State*, No. 02-17-00246-CR, 2018 WL 3060093, at *3 (Tex. App.—Fort Worth June 21, 2018, pet. ref'd) (mem. op., not designated for publication); *Garrett v. State*, No. 12-15-00208-CR, 2017 WL 1075710, at *3 (Tex. App.—Tyler Mar. 22, 2017, no pet.) (mem. op., not designated for publication).

Appellant argues that "there is no evidence in this case that [J.C.] was in great need of medical attention. She was building a criminal case." However, Songer testified that the primary purpose of a sexual assault exam is to evaluate medical issues and provide treatment after a sexual assault. She testified that collecting forensic evidence is a secondary purpose. Striegler also testified that the purpose of a sexual assault exam is "strictly medical." Thus, we conclude that the statements contained in the report were non-testimonial and that Appellant's trial counsel was

not ineffective for not objecting to the statements.[3] As previously noted, the report had already been admitted during the guilt/innocence phase of the prior trial. Further, the trial court was correct in stating that a witness may read from an admitted exhibit. *See Wheatfall v. State*, 882 S.W.2d 829, 838 (Tex. Crim. App. 1994).

Appellant next complains that his trial counsel was deficient because he failed to object to the prosecutor's closing argument, which he contends was improper. Appellant concedes that it is proper to ask the jury "to send a message," but he contends that asking the jury to "hammer" the accused is a "visceral appeal to the desire for vengeance" and is not proper argument.

Proper jury argument "falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument of opposing counsel, and (4) plea for law enforcement." *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). When reviewing an alleged error in improper jury argument, the appellate court must analyze the statement in light of the entire argument. *Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). We consider the challenged remark in the context in which it appears. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). The purpose of closing argument is to aid the jury in properly analyzing evidence and to aid it in reaching a just conclusion based only on the evidence presented. *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019).

Here, the prosecutor's argument to send a message to the victims and the community was a proper plea for law enforcement. *Freeman*, 340 S.W.3d at 729;

---

[3]Although J.C. had not yet testified during the punishment trial at the time Songer read her previously admitted report to the jury, the State called her as its next witness. J.C. gave a more detailed account of the sexual assault, and she was subject to cross-examination.

*Borjan v. State*, 787 S.W.2d 53, 55–56 (Tex. Crim. App. 1990). One of the goals of the Penal Code is to ensure the public safety through deterrence, rehabilitation, and punishment. *See* TEX. PENAL CODE ANN. § 1.02(1) (West 2021). The prosecutor's argument employed the analogy of tools and toolboxes—an analogy that the prosecutor had used throughout trial. The prosecutor referred to the four options in the punishment charge as tools available to the jury to send a message to the community. The prosecutor's argument that the jury use its "hammer" to send a message can reasonably be understood, in the context of the whole argument, as an appeal to impose the harshest of the four available punishment options. Thus, the prosecutor's closing argument was not improper, and Appellant's trial counsel was not ineffective for not objecting to it. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


December 16, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.